1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF OREGON

 3   UNITED STATES OF AMERICA,      )
                                    )
 4             Plaintiff,           ) No. 3:12-cr-00659-MO
                                    )
 5        vs.                       ) November 25, 2013
                                    )
 6   REAZ QADIR KHAN,               ) Portland, Oregon
                                    )
 7             Defendant.           )
     -------------------------------
 8

 9

10

11

12

13

14                     STATUS CONFERENCE

15                   TRANSCRIPT OF PROCEEDINGS

16           BEFORE THE HONORABLE MICHAEL W. MOSMAN

17             UNITED STATES DISTRICT COURT JUDGE

18

19

20

21

22

23

24

25
```

```
 1                           APPEARANCES

 2    FOR THE PLAINTIFF:    Ethan D. Knight
                            Assistant United States Attorney
 3                          U.S. Attorney's Office
                            1000 S. W. Third Avenue
 4                          Suite 600
                            Portland, OR  97204
 5
      FOR THE DEFENDANT:    Amy M. Baggio
 6                          Baggio Law
                            621 S. W. Morrison Street
 7                          Suite 1025
                            Portland, OR  97205
 8
      COURT REPORTER:       Nancy M. Walker, CSR, RMR, CRR
 9                          United States District Courthouse
                            1000 S. W. Third Avenue, Room 301
10                          Portland, OR  97204
                            (503) 326-8186
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2            MR. KNIGHT:  Good morning, Your Honor.  We're
 3   present in the matter of United States versus Reaz Khan.
 4   This is Case 12-cr-659, Ethan Knight appearing on behalf
 5   of the Government.  Amy Baggio is present with the
 6   defendant, who is present, out of custody, and we're here
 7   today for a status conference in Mr. Khan's case.
 8            THE COURT:  Tell me about the status.
 9            MR. KNIGHT:  Your Honor, since the parties last
10   appeared before this Court, the Government has responded
11   to the initial defense inquiry regarding discovery, with
12   a copy to the Court.  The parties, in response to that,
13   have had continued discussions about issues related to
14   discovery, specifically items Ms. Baggio may need that
15   the Government is following up on.
16            Specifically regarding the e-mail question that
17   was raised at our last hearing, the Government has
18   reproduced at this point all of the e-mails consistent
19   with the Court's order at our last hearing; that is, the
20   agent went through each e-mail individually and
21   reproduced any e-mail that appeared to have a problem and
22   then reproduced an entire set together, to ensure that
23   they were all there together, in toto.
24            Separately, Your Honor, the Court -- or, pardon
25   me, the Government has provided the Court with a status
```

1  update regarding the computer forensic analysis in the
2  case.  That was an issue raised at our last hearing as
3  well.  I can report to the Court -- and this has been
4  summarized to Ms. Baggio and the Court separately -- that
5  the analysis of the hard drives seized in the case is
6  ongoing.
7       And I had reported to the Court on November 12th
8  that I expected that that analysis and the forensic
9  report would be complete by the end of January.  I spoke
10 with the FBI last Thursday, and we're now in a position
11 where we believe that should be provided earlier, perhaps
12 by the end of December.
13      THE COURT:  So what, if anything, do you believe
14 that does or should do to the deadlines?
15      MR. KNIGHT:  That, I think, Your Honor, is simply
16 to inform the Court, because that was a status issue the
17 Court wished to be updated on.  I don't believe that
18 affects any of our other deadlines.  It simply gets that
19 material and that report potentially in the hands of the
20 defense one month sooner than we anticipated.
21      THE COURT:  All right.  Thank you very much.
22      Ms. Baggio.
23      MS. BAGGIO:  Good morning, Your Honor.
24      THE COURT:  Good morning.  Do you have any
25 concerns about the existing deadlines at this point?

1      MS. BAGGIO: Your Honor, apart from trial, I
2 don't believe that we have other deadlines. I may be
3 incorrect on that. But I believe that the plan, Your
4 Honor, was that we were going to submit a proposed
5 litigation schedule, but the defense had requested
6 additional time to review the discovery first so that we
7 could identify which motions might be worthy of
8 litigation.
9      THE COURT: All right. So that's why Mr. Knight
10 was confused by my question.
11      MS. BAGGIO: And if I --
12      THE COURT: Where are we now in the process of
13 being able to set up a plan?
14      MS. BAGGIO: Your Honor, if I may, I would like
15 until April to set -- to provide to the Court a proposed
16 litigation schedule. That would allow me to complete my
17 review of the discovery.
18      I think at our last status conference the
19 Government had provided us disks 1 through 17. We're now
20 up to disk 70. A lot of those -- the Government is
21 providing us everything they seized from the search
22 warrant. So there's a lot of information. Many of those
23 disks, as I understand, contain programs. So it's not
24 going to be as time-consuming as the number 70 suggests.
25      But I would request that -- I think if we were

1  given until April, that would allow me to be able to
2  eliminate any motions that I think might be -- might lie
3  in the case but that upon further review of the discovery
4  we don't need to schedule them.
5         And what I would suggest, if the Court was
6  willing, is that we could submit a joint proposed
7  litigation schedule prior to a status conference in April
8  and then at the status conference discuss the dates
9  included in that.
10         THE COURT:  All right.  I'm not asking for
11  anything that I'm going to hold you to, but just walk me
12  through, if that's -- if that's when you give me a plan,
13  how we squeeze everything in between now and trial.
14         MS. BAGGIO:  I don't believe, Your Honor, that
15  we'll be prepared to go to trial in May of next year,
16  Your Honor.
17         THE COURT:  So you're thinking, based on what you
18  know so far, that you need at least a fall trial date in
19  order to make everything happen?
20         MS. BAGGIO:  Yes, Your Honor.
21         THE COURT:  In April you'd be proposing some sort
22  of resolution of pretrial motions -- well, first
23  resolution of any discovery, then resolution of pretrial
24  dispositive motions, then gearing up for trial, basically
25  something in that order?

1       MS. BAGGIO:  That's correct, Your Honor.  I've
2  identified approximately 10 different rounds of
3  litigation.  And the thought was that we could do each
4  round consecutively, to its completion, and then go to
5  the next round.  But I've never had a case quite like
6  this before, and if the Court has other thoughts --
7       THE COURT:  Tell me your 10 rounds, so I know
8  what we're trying to squeeze in.
9       MS. BAGGIO:  Okay.  The first round would be
10 litigation regarding notice of the FISA Amendments Act;
11 the second round, a motion to compel discovery not
12 related to FISA or the FISA Amendments Act.  The
13 third --
14      THE COURT:  Now --
15      MS. BAGGIO:  Yes, sir.
16      THE COURT:  That's what you're going through
17 right now, essentially, right?  You're getting
18 non-FISA -- well, of course, you don't really know.
19 You're getting discovery.  You don't know the source at
20 this point.
21      MS. BAGGIO:  That's correct, Your Honor.
22      THE COURT:  And so you have just litigation such
23 as you've been informally engaged in up to now, about
24 what might be missing or what you still need.
25      MS. BAGGIO:  Exactly, Your Honor.

1          THE COURT:  And round 2 for you is essentially to
2   draw to a conclusion, by motion if necessary, those
3   discovery disputes, right?
4          MS. BAGGIO:  I'm sorry.  The first thing the
5   Court described, was that the round 1, or that was in
6   terms of what --
7          THE COURT:  I'm just saying round 2 is what we
8   see in most complex cases:  a period of litigation where
9   we bring to a close all discovery disputes, right?
10         MS. BAGGIO:  Well, my thought again was that this
11  would be not related specifically to FISA or the FISA
12  Amendments Act, but for example, if -- with the letter
13  correspondence or the letter response that the Government
14  provided as to their positions as to certain specific
15  discovery requests that we were making in the case, then,
16  yes, sir, if that answers your question.
17         THE COURT:  Right.  So round 2 is just what you
18  would normally see by way of discovery disputes in a
19  normal complex case.
20         MS. BAGGIO:  I'm sorry.  Yes, I agree.
21         THE COURT:  And round 1 is about FISA discovery
22  or some other FISA issue?
23         MS. BAGGIO:  About notice of the Government's use
24  of the FISA Amendments Act, Your Honor.
25         THE COURT:  So you want to know if it was used;

1  and you also want to have identified what came from FISA
2  sources, if any, in the case.
3          MS. BAGGIO:  That's correct.
4          And, Your Honor, what I did was I looked at other
5  similar national security cases.  And those parties
6  litigated separately whether the Government would provide
7  notice preliminarily, and then there was a separate round
8  of litigation scheduled as to the contents and lawfulness
9  of the FISA Amendments Act.
10         And I understand this is an evolving area for the
11 Government, and I have spoken to Mr. Knight about it.  I
12 know that their office -- I don't want to speak for him,
13 but their office is considering whether or not a notice
14 will be filed, as I understood it.
15         THE COURT:  So you already are in a position
16 probably to file some of that litigation, but you're
17 holding off for now while this question of whether you'll
18 get notice voluntarily from the United States is
19 resolved.
20         MS. BAGGIO:  If the Government gave notice, then
21 we wouldn't need to litigate that, Your Honor, correct.
22         THE COURT:  All right.  Thank you.
23         Round 3?
24         MS. BAGGIO:  I had as round 3 the motion to
25 compel the applications, orders, and other materials

1  related to the electronic surveillance.  And this would
2  be the FISA, FAA, and other non-disclosed investigative
3  resources resulting in evidence against the defendant.
4          THE COURT:  All right.  4?
5          MS. BAGGIO:  4 would be a motion to compel
6  applications, orders, and other materials related to
7  physical searches and seizures.
8          THE COURT:  Thank you.
9          MS. BAGGIO:  May I go to 5?
10         THE COURT:  Yes.
11         MS. BAGGIO:  No. 5 would be a motion to suppress
12 evidence derived from the FISA intercepts.
13         THE COURT:  Okay.
14         MS. BAGGIO:  No. 6 on my list would be a motion
15 to suppress evidence derived from the FISA Amendments
16 Act, if it were to have been used in this case.
17         THE COURT:  7?
18         MS. BAGGIO:  A motion for a bill of particulars.
19         THE COURT:  8?
20         MS. BAGGIO:  Motion to dismiss the indictment.
21         THE COURT:  On any theory that you have, right?
22         MS. BAGGIO:  Yes, sir.
23         THE COURT:  9?
24         MS. BAGGIO:  Motion to controvert the search
25 warrant.

1        THE COURT: Are you referring to some sort of --
2   well, tell me what you mean by that.
3        MS. BAGGIO: What we do know in this case, Your
4   Honor, is that there was a court-ordered warrant for my
5   client's home. That home was searched in April and a
6   number of items were seized, including the vast majority
7   of the electronic devices now being reviewed by the
8   Government. And my motion litigation as to No. 9 would
9   be in the more classic sense of a challenge to the
10  motion -- I'm sorry, to the warrant issued for my
11  client's home.
12       THE COURT: And 10?
13       MS. BAGGIO: 10, I just had it listed as pretrial
14  documents.
15       THE COURT: So 10 gets into the whole area of
16  just challenging exhibits, witnesses, all in advance of
17  an actual trial.
18       MS. BAGGIO: Yes, Your Honor, that's correct.
19       THE COURT: So I'm sure you see what I see, that
20  some of these are easily clumped together, where you
21  wouldn't really necessarily have to have nine distinct
22  pretrial phases. Some could be handled all in one
23  hearing, couldn't they?
24       MS. BAGGIO: I believe so, Your Honor. I was
25  just looking at the way other courts have handled it.

 1  However you want to do it, we're fine with that.
 2          THE COURT:  But you just don't feel ready to be
 3  more specific about that until you're deeper into the
 4  evidence.
 5          MS. BAGGIO:  That's correct.  It may be that
 6  there aren't nine, there are five, or however many.
 7          THE COURT:  All right.  Mr. Knight, any thoughts
 8  on that before I start talking about the next date for a
 9  status conference?
10          MR. KNIGHT:  No.  I believe Ms. Baggio's request
11  is reasonable.  It is indeed complicated, and that seems
12  like a reasonable timeline at this point.
13          THE COURT:  You're not currently asking me to
14  strike the trial date, but you almost certainly will down
15  the line?
16          MS. BAGGIO:  That's correct, Your Honor.
17          THE COURT:  Have you talked to your client about
18  the delay that would build into the case?
19          MS. BAGGIO:  Yes, Your Honor.
20          THE COURT:  And he's agreeable?
21          MS. BAGGIO:  Yes, Your Honor.
22          THE COURT:  I'm not going to strike the trial
23  date either, because miracles happen and we might have
24  all this happen quickly.
25          I appreciate that you believe, on the basis of

```
 1   what you've seen so far, that you need until April to be
 2   specific in any kind of detail about what happens next,
 3   but I am going to try to get us together towards the end
 4   of January for another status conference, where I see
 5   really where things stand and assess again the number of
 6   hearings we'll need and the timing that we're on.  And at
 7   that time we'll take a really close look at the May trial
 8   date.
 9           Ms. Stephens, can you suggest a status conference
10   at the end of January?
11           THE CLERK:  With your permission, could we set
12   this on a Friday, the 24th?
13           THE COURT:  Yes.
14           THE CLERK:  We have time available Friday,
15   January 24th, at 9:30.
16           THE COURT:  Will that work for both of you?
17           MR. KNIGHT:  Yes, Your Honor.
18           MS. BAGGIO:  Yes, Your Honor.
19           THE COURT:  All right.  We'll get together then.
20   We'll see what's happened with the hard drive issue and
21   other discovery production issues, talk about the trial
22   date, and just see how far along we are.
23           I'm sensitive to the idea that the nature of the
24   case, both international in scope and somewhat unusual
25   discovery issues, as well as the usual issues that go
```

1  with large production and e-discovery, require some extra
2  time.  I don't want to just keep it open ended, though,
3  so we'll just stay on top of it in January and see how
4  close we can get to being specific about how quickly we
5  can get this all to trial.
6          Thank you, all.  We'll take it up in January.
7          THE CLERK:  This court is in recess.
8
9
10         (Proceedings concluded.)

```
 1                         --oOo--

 2

 3          I certify, by signing below, that the

 4     foregoing is a correct transcript of the record

 5     of proceedings in the above-titled cause.  A

 6     transcript without an original signature,

 7     conformed signature or digitally signed signature

 8     is not certified.

 9

10

11
       /s/ Nancy M. Walker                   1-7-14
12     _____    _____
       NANCY M. WALKER, CSR, RMR, CRR       DATE
13     Official Court Reporter
       Oregon CSR No. 90-0091
14
```